After a nine-day jury trial, my client, Medisim Ltd., prevailed. The jury found that the defendant, and awarded $1.2 million in damages. The jury also found that the infringement was willful. The jury further found that Bestmed had been unjustly enriched to the tune of $2.29 million. Thereafter, the District Court ordered judgment in the amounts found by the jury. $1.2 million for infringement and state execution of the order pending post-trial motions. Things went downhill from there. Post-trial motions were filed and the judge improvidently granted them and eviscerated the entirety of the damages award and most of the relief that the jury awarded to my client, Medisim. The granting of the JMOL motion was inappropriate. It was constitutionally impermissible and was not within the bounds of the case law of this court or the Supreme Court. It seems to me that on the important question of preservation of the JMOL that there may be a difference between the two issues, the anticipation and the unjust enrichment. The elements of unjust enrichment are not proved. The judge found that was enough to notify me, the judge, what the issue was, and the party and your side. Why is that not enough for the unjust enrichment? For the unjust enrichment judge, it's not enough to spout the elements. It needs to be particularized grounds because, as you know, there could be a variety of different grounds under which the defendant moved for unjust enrichment JMOL. We particularized them because there wasn't a problem at the 50A stage. They made a particular claim for unjust enrichment that the matter should be deprived of being sent to the jury because Medisim made no showing that Medisim benefited at Medisim's expense. And also that Medisim had used its prior relationship with SMed in order to gain an entry into the marketplace. So they were able to particularize the grounds on which they moved under Rule 50A. Merely restating the elements is not enough and does not meet the requirements of the Samuels case in the Second Circuit and likewise the Smed case. Just on the unjust enrichment. At this point in this court, you pin your entire unjust enrichment case on the proposition that the testing protocol was proprietary to you and they therefore acted improperly in getting the benefit of that by providing it to their new supplier. If we were to conclude that that topic was within the subject of the contract and therefore not a matter of unjust enrichment under state law unjust enrichment principles, then there's no material issue of patent preemption, right? There is no material issue of patent preemption or contract preemption. Neither of those two theories apply. Because as you noted Judge Toronto, the basis for the unjust enrichment which has been consistent throughout the case has been that the implementation of the test mode and the water bath testing protocol which was a prerequisite to passing the testing necessary to sell the product in the U.S. was proprietary and was misappropriated to the benefit of SMed. Was that not within the scope of the contract between the two parties? Because the contract provision said we, MEDISEM, will let you know if there's anything protected about some information that you're getting from us. As long as there's a provision about protecting information, then doesn't the principle apply that when a topic is covered by a contract you can't supplement it by unjust enrichment? Not entirely, Judge, because as you probably also know, the agreement specifically required that confidential information be marked and it was an oversight on MEDISEM's part, but MEDISEM did not mark the water bath testing protocol confidential. Therefore, because it was not marked, it was not within the scope of the agreement, leaving MEDISEM without a contract remedy which is exactly what unjust enrichment is for with the equities of the situation being considered to afford the aggrieved party the benefits where it doesn't have another remedy. Let me change topics if you don't mind. Now I'm thinking about the anticipation piece. Suppose there is a new trial. I did not understand your brief to argue that if the grant of a new trial was proper, the new trial should be limited in some way, perhaps only to anticipation. As I take it, the grant of the motion for a new trial was as to the whole patent infringement claim. I think there are three invalidity defenses, damages, and the whole thing would be redone. I think it's clear from the concession made by the defendant and from the court's opinion that new trial was granted only as to anticipation. No other ground of invalidity and certainly no other non-invalidity ground. I think that under the circumstances, Judge, that the district court has, as you know from our brief, improvidently granted new trial without citing any grounds under 50C1 as the court was required to do. Why do you think it's clear that the grant of new trial was limited? The whole thing is this footnote 158, right? That is correct. There's nothing limiting in there. It's true that that comes near the end or at the end or something. Anyway, in the midst of the discussion of anticipation, which was the only ground in which the judge granted JMOL, but why is the new trial grant limited to that? Well, Judge, as you know, the judge also, below, also granted JMOL on unjust enrichment. Yes, yes. And it is our view and based on page 59 of the defendant's brief, defendant's view, that new trial grant applies only to anticipation. It doesn't apply to unjust enrichment or to any other ground of invalidity. You said on page what of their brief? Page 59. So with regard to new trial, as you know, Judge, Rule 50C requires that there be some particularization or grounds, and there was none. The judge dropped a footnote and unfortunately signaled that she intended to have a summary judgment, which is going to impose that court's will as to the anticipation issue. And the judge usurped the province of the jury, usurped the fact-finding role of the jury, weighed evidence, discredited medicine's witnesses, made credibility assessments, unfortunately in an effort to reach a decision that countermanded that of the jury who sat through all the evidence and waited after nine arduous trial days and came to a reasonable, fair-minded conclusion. But the tool of JMOL exists for a reason, right? There are times where you can get a JMOL even in light of a jury verdict after a nine-day trial or a 25-day trial. And so there can be circumstances where a judge can be compelled to conclude that no reasonable juror, in light of the evidence on the record, could really have concluded any other way except perhaps in this instance that the claim is invalid. Absolutely, Judge Chen. There's no question about it that JMOL does exist for a reason. So this judge kind of throughout the entire opinion makes it clear that she kind of wishes the other side had filed for a summary judgment motion in the first instance. That's how compelling the case, in her view, is for invalidity. So the grounds for why she believes that there is merit to conditionally granting a motion for a new trial is quite clear from reading her opinion, I think. Understood. But Rule 50C1 requires more. It requires a delineation between the grounds for the new trial and the grounds for the JMOL. It is clear from her opinion that the opinion is focused on justifying JMOL. As Rule 50C1 requires, she conditionally considered a new trial and conditionally granted a new trial, but she didn't meet the standard by demonstrating that there was any, to back up, that there was any seriously erroneous result or any miscarriage of justice. But why isn't the entirety of her insufficiency of evidence analysis automatically supportive of the conclusion that the verdict was against the great read of the evidence? What more is there to say? What she should have said and could easily have said is, for the reasons expressed in my analysis of the JMOL, citing the appropriate standard of seriously erroneous result or miscarriage of justice, this part applies to my new trial consideration and that part applies to my new trial consideration. But she did not. In other words, if 158 had been, for the reasons, what about if she had just stated, for the reasons stated above, this is then putting out 158. Right, I think it. So she had said, for the reasons stated herein, and then just added that phrase before what she said, that would be sufficient in your view. I think maybe a bit more, but along those same lines. If she had particularized which portions of her JMOL analysis applied to new trial and applied them to the appropriate legal standard, it could have been in a paragraph, it could have been in two paragraphs. She's an experienced district court judge. She had the ability to do that. She knew what she was doing. What about just for the reasons stated herein? Would that be sufficient? I think that might be a little bit too vague and ambiguous. I think it requires, under Rule 50C1, some measure of particularity delineating the specific bases for the conditional new trial tied to the legal standards that Rule 50C1 requires. Can I ask you on the 50A, 50B question? Yes. Assume for purposes of this question that I do not see any mention of anticipation in Besmet's 50A motion. Assume also that I'm not seeing from the record in what respect you lacked notice that you might need more proof. What do I do? What you do is you honor the Constitution and you are not running afoul of the Seventh Amendment, making it constitutionally impermissible for the granting of a post-verdict JMOL absent a pre-verdict JMOL. Are there cases that say very specifically when it's perfectly plain there's no 50A motion and it's perfectly plain that there was, as a practical matter, no prejudicial failure of notice, nevertheless the 50B is waived? Or the other way, we can excuse the complete failure to make the point on 50A as long as there's no practical notice problem. Either way. I'm not aware of any such cases, Judge, because, again, it is constitutionally grounded in the Seventh Amendment. And I would refer you to the I4I case, which we cite in our brief as emblematic of that, the seriousness with which that issue is considered. But there is case law out there, including from the Second Circuit, that kind of talks about the notion that you have to consider whether a 50A was properly made or improperly made based on the overall context of what was going on. And we do have to consider that. And it did seem like the other side, at the very least, gave your side enough notice that they believed that these claims were anticipated by the FHT1 device. And that in their view, they informed the judge and you that in their view there was clear and convincing evidence of that. Judge Chen, I think taking your comment to the extreme would eviscerate entirely Rule 50A. Of course we have knowledge of the fact that they claim anticipation by the FHT1 device. We sat through the trial. We heard the evidence. That is true for all potential 50A claims. 50A means something. It can't be just that you are aware of it because you sat through the trial and you know what the other side's views are. There is a specific constitutional requirement that they put their money where their mouth is, pre-verdict, on the record, clearly and precisely, with grounds that people can understand. Otherwise, why do we have 50A to begin with? We can say you were aware of what their arguments were so you were on notice and be done with it. I'm sorry, can I just really quickly go back to unjust enrichment? Yes. The water bath testing information that you're arguing about now. Yes. I thought what you were arguing during trial was there was an unjust enrichment claim because the other side had misappropriated the look, sound and feel of your thermometers. And that, to me, is a different ground for unjust enrichment than what you're raising in your briefs to us, which is about a testing scheme. Understood, Judge. We had an unfair competition claim below and the evidence to support the unfair competition in many respects was similar to the unjust enrichment. But the issues that you cite, the look and the feel of the device, the packaging, the error codes, the beep sequence, was for the unfair competition angle. The usurpation of the water bath testing protocol, likewise, supported unfair competition. But when you parse out the claims, it's the proprietary nature of the information, the implementation of the test mode, the water bath testing protocol itself, which forms the basis for the unjust enrichment. And where did you say that during the trial? The water bath testing scheme is the basis for your unjust enrichment claim. At this point I couldn't specifically say where, but we made it clear during the questioning of the witnesses and focused on the proprietary nature of it and pinpointed the understanding that it was provided to the other side by a nondisclosure agreement. And whether we – where and how we actually articulated it, I don't know off the top of my head. But I don't know that that is dispositive, Judge. As you know, in the course of trial, things are rushed, things are hurried. You're trying to get your evidence in. You're trying to meet all the elements of all the claims. You're dealing with ten things at once. And sometimes things are not as precise as you would like them to be. Which sometimes can make it hard to be specific with a 50A motion when you're not exactly sure what the exact theory is on the other side for a particular claim. But here we don't have any doubts in that score because they were able to articulate a Rule 50A motion with sufficient precision. They were able to cite the specific evidence to support their 50A motion in addition to spouting off about the elements not being met. So it was clear that by virtue of that, they understood enough about the unjust enrichment claim in order to intelligently make a 50A motion. And here's my last question about unjust enrichment. You put on evidence for why you deserved a damage award for patent infringement based on the sale of those accused products. Yes. Did you put on some kind of case for the additional amount of benefit that BestMed received unjustly and were enriched by for using the water bath testing scheme? We did have a separate case. I couldn't find that. And that's why I thought the district court said you can't get this double recovery for unjust enrichment because the only evidence that's really in the record for damages is patent damages. And so there isn't some other grounds for damages that have been really calculated up by the plaintiffs. Okay. Actually, Judge, I will refer you to A4141 of the appendix. In that portion and throughout, the district court judge praised BestMed's damages expert for doing exactly that, for parsing out patent damages and non-patent damages, specifically calculating disgorgement of profits, but showing that it was not the equivalent of BestMed's lost profits. And at A4141, the judge said, talking about the BestMed, I'm sorry, the medicine experts, that he carefully said which ones he thought shouldn't be in medicine sales, subtracting out the ones he thought medicine couldn't have made. And in the process, did not equate medicine's lost profits with disgorgement of the defendant's profits, and had two separate figures which were presented to the jury through the expert testimony. I believe I'm over my time. I'm sorry. Thank you. Will we start two minutes or about? Thank you, Judge Wilson. Okay. Well, Mr. Bagatelle, we'll add a few more minutes onto your time if you need it. May I please report? Dan Bagatelle on behalf of BestMed. We've focused on several issues today. I'll try to take them in order. I know you're concerned somewhat about the waiver issues. I'll turn right to that. The way I framed it before is, I guess, the shape of the question I'd like answered. I don't think from your brief that you dispute the proposition that you did not, in fact, include an anticipation argument in any 50A motion that you made. On that assumption, what case law is there that says, when it's just indisputable this issue was not in any 50A motion, that nevertheless you can make the 50B motion based on a conclusion that de facto there wasn't a notice problem? If I may explain what we did argue and the basis of our argument that we haven't waived it, it might be a useful predicate. We recognize that we did not expressly say we cross-moved for J Maul when they moved for J Maul on the anticipation issue. But we did say there's clear and convincing evidence of anticipation from the mouths of their own witnesses. Right. But you know that that's not the same thing as saying only one conclusion is possible. That's what 50A says. I recognize that. But I actually... That fact said it's ready for the jury. He came back... I think the colloquy is somewhat ambiguous. And on that basis, I think we've asked you to defer to the district judge who was sitting there hearing the evidence, hearing the argument as to whether that issue was adequately preserved to put them on notice of a flaw in their case. I do think that's the standard, to be honest with you. What's a case that says we recognize that there absolutely was no... There's nothing to interpret here. Take that as the assumption. There simply was no 50A motion on whatever the ground is being litigated. But we also don't see that as a practical matter there was a notice problem, and therefore a district court may allow the 50B motion. I think the Supreme Court case that they cited, I believe it's Exxon Shipping v. Baker, the footnote is the last word from the Supreme Court on that point. And it basically says you need to have made... Put them on notice under 50A to be entitled to relief under 50B. I don't know of any case law that says it has to be in the form of a... Using the word motion or move, the question is practically... I think I was imprecise about notice. Let's assume there was absolutely no notice that they received, implicitly or otherwise, that you were asking for judgment as a matter of law on the issue. The question is, can the district court nevertheless say they had all the warning in the world that they needed to put on their best case and that you thought that their opening case or their response might not be enough and so maybe they should rethink whether they should close, end their case, and go on. So can a district court excuse the absence of a 50A motion based on the conclusion that the policy underlying it is fully satisfied without it? I don't think the district court can fully excuse any compliance with 50A. I think what the district court can say is that although you didn't use the word motion, you put them on notice as required by 50A. I know that's a fine line, but I think that's actually the scenario here. We did indicate that there was clear and convincing evidence in support of our position, and we explained that it came from the mouths of their witnesses. If your honor disagrees with that and thinks that was not putting them on notice of a flaw in their case, then you would find a waiver and you would reach the court's conditional new trial motion, which, as I think you recognize, she granted at least as to anticipation. It was in the anticipation section of the opinion. What's your view about the scope of the grant of new trial? To be honest, I think she granted new trial on our anticipation defense because it was in the anticipation portion of the opinion. That said, she did not reach our additional motions for shame all and new trial on a variety of other issues, including enablement, including written description, including non-infringement. She did reach shame all on the unjust enrichment claim. She did not make a conditional new trial ruling on unjust enrichment. If your honors find that we waived on the unjust enrichment side, you would need to send that back under Second Circuit law for her to make a conditional new trial ruling. I would submit, however, for the reasons that we've already discussed today, that we did not waive any shame all as to the unjust enrichment claim because we expressly moved for shame all during trial, and that motion laid out every element and explained why they weren't entitled to prevail on unjust enrichment. The third prong of it says that equity and good conscience require restitution, and we argued that they made no showing of a denial of legitimate expectation of compensation, and that was more than adequate given the way that they had presented their case. At trial, it was never really tied to the water bath issue. There was maybe 10 or 15 minutes of trial over a two-week trial. It was never argued in conjunction with the unjust enrichment claim. Unjust enrichment was just an amalgam, kind of a tack-on to the unfair competition claim that they lost at trial. So we made a generic motion in response to their generic case specifying what element was missing. On appeal, they have focused on the water bath issue, and of course we have now responded with more to particularized response, but it's the same argument that equity and good conscience do not require restitution because they weren't denied any legitimate expectation of compensation, and the primary argument, of course, is that the contract expressly addressed the issue of what was confidential information that we had a duty not to disclose. This information was not designated as confidential. It was disclosed to third parties, including testing labs, available to customers with netizens' knowledge. It simply was not confidential information, and the contract drew the line between what is confidential and what is not confidential. If you'd like, I can go right to the merits of the unjust enrichment claim or the patent claim. I don't want to short-strip the waiver or forfeiture issue, though, if Your Honors would like to discuss that. I know that it is premature to address any question about what would happen if a new trial on anticipation were granted and you took up the district judge's invitation to file a summary judgment motion. Do you have any thoughts about that? I assume that on the grant of a new trial, the other side, in response to a motion of yours, gets to submit new declarations and say we have new evidence and the record might be different from what the record is on the current trial. In theory, yes. In practice here, no, and the reason is that what dooms them is the admissions of their own witnesses repeatedly and what the patent says. The anticipation issue was did the FHT1 calculate an intermediate deep tissue temperature and then convert it to the final core body temperature. They admitted that it calculated as an intermediate temperature the output of the 397 patent heat flux algorithm. And even admitted, I think, that that was the T average. And that was T average. Now the question is, is that a deep tissue temperature? And I think the 668 patent itself answers that question. If you look at the bottom of Column 6, you're nodding, the bottom of Column 6, top of Column 7, the patent expressly defines T average as the output of that heat flux algorithm and then it expressly defines that output as a local or deep tissue temperature. Can I just take you back to the procedural? Yes. Are you aware of precedent that addresses one way or the other this question whether if there was a procedural default on the insufficiency argument in a JMOL context, so that JMOL couldn't be granted but a new trial is granted, whether exactly the same result can be reached by a summary judgment motion or whether there's something you missed your opportunity. I'm not aware of any such doctrine. I mean, basically, if the new trial is granted, we go back as though we're retrying it afresh. And I think the district court, I believe, cited Arcelor Mittal as an example of a case where the court can entertain pretrial motions of any sort. She can readdress motions in limine. She can grant summary judgment. She can do what's ever appropriate as though the first trial never happened. We have not waived our opportunity for all times. Otherwise, we would be entitled to make a JMOL motion in any new trial if a new trial occurred. If you'd like, I can continue with the merits of the Arcelor argument or turn to unjust enrichment. Where did the jury get the $2.9 million damage award for unjust enrichment? I think it was 2.29, and I believe it was almost exactly half of best met profits. And the concept that half of best met profits were due to this test protocol is unfathomable. It's just unbelievable that they would have awarded it on that basis. It was not the way the case was tried. There was a lot of argument at trial about sort of bad practices by best met during the course of the party's agreement or bad practices afterwards by copying beeps and bells and whistles. The problem with all that is that the jury rejected those arguments, and the jury found no unfair competition. So they realized after trial they couldn't make those arguments, especially given the patent preemption problems. They were not able to make claims of unjust enrichment based on anything that was out in the public domain, and all of that was out in the public domain. So what are they left with? They have to ride a new horse, and that horse is the water bath testing. As I said, this was not really the basis on which the case was tried. And we submit that it's clearly covered by the contract. The contract delineates between what is confidential and what is not confidential. Their argument that somehow if you don't notify the other side of whether something is confidential, you're entitled to make a tort claim or a claim in equity, that would be shocking to people in Silicon Valley or the pharmaceutical industry that all of a sudden they thought they had an agreement. They knew what was going to be considered confidential, but all of a sudden they're subject to a whole bunch of other claims. That can't be right. The scope of the contract was not labeling. The scope of the contract dealt with what is confidential information and what is not, and this clearly was not confidential information either by the contract or in fact. Turning back to the patent side of the case, I think I've explained to you why I think the patent itself answers the dispositive question, whether that intermediate temperature concededly calculated by the FHT1 device qualified as the claimed deep tissue temperature. I just want to point out that all the other evidence that's been cited in the brief is actually consistent with that conclusion. We've discussed those rate documents, the rapid accurate temperature estimation documents where they describe their product. These are documents from the 2003 era. They talk about calculating deep tissues underneath the skin, so clearly that's the technology they were using at the time. We talked about the source code. They raised the source code in the brief. We pointed you, and we did point at trial, to the calculation subroutine, which calculated this TF or T average. That's the output of the heat flux algorithm, and then the polynome subroutine that adjusts that to the core body temperature, at least ambient temperatures. All of that's consistent with what the judge determined. They've argued about it. There's testimony on the other side, right? Yeah. Dr. Lipson and Yarden. Well, okay, here's what he testified. He's talking about what we really did was we calculated deltas from a fixed baseline. Well, we never really argued that the fixed baseline was the deep tissue temperature. What he's basically trying to do is conflate all of the calculations into one thing and say the first four terms are the variable terms and the last three are the constants. So he's basically conflating the two, but he acknowledges, even he says the delta includes a term TF or T average, which is the output of the 397 heat flux algorithm, and that number, according to the patent itself, is an intermediate deep tissue temperature. He can try to recharacterize it, but it still uses that TF and converts it to another number. It's an intermediate calculation, and that wasn't disputed at trial. He argued something in the reply brief, I believe, that they were talking about TF minus 27. If you're a C person, you'll see at one portion of the code it says TF minus equals 27, which basically says take the previously calculated value of TF and subtract 27 and stuff it back into TF. For our purposes, we don't care whether it's the original TF is the output of the 397 heat flux algorithm or it's the original TF minus 27. They're still calculated and then dumped into this third-order polynomial formula, just like the patent describes. The only other evidence they cited in the appeal is this Lipson self-test testimony at A4424. I've read that now 15 times, and I'm still having a hard time making head or tails of it. But from what I understand, he said he calculated something in test mode, held it up to his temple, and got a 95-degree temperature. Okay, the problem with that is test mode tells you the temperature of the sensors at the skin. That is not a deep-tissue temperature. In fact, the whole patent talks about converting the temperature of the skin using this heat flux algorithm into a deep-tissue temperature. They're not the same. He didn't testify that he held it to his skin for an hour so that it became close. He just testified he put it into test mode. That's not going to give you a deep-tissue temperature. And the other number, we're not quite sure what it was. It's 92 degrees, apparently using normal mode, and some calculation using some portion of the code. It's hard to tell what it is. They're correct that we did not object to that testimony when it was given at trial, even though it was more than arguably inconsistent with the judge's ruling on Daubert. Nevertheless, it's still not substantial evidence to support the jury's verdict of no anticipation. I think in the end, though, you really come back to the patent and what they admitted. They admitted that the output of the 397 algorithm was calculated, and the patent tells you that the output of the 397 algorithm is a deep-tissue temperature. They can't run away from the patent. Thank you. A few brief points in response. The patent does not equate T-average with deep-tissue temperature. I lack the time to more particularly explain why. It says quite clearly that T-average is the output of the 397 algorithm. The FHT1 device does not calculate deep-tissue temperature. Never has, never did. The testimony was clear. The inventor testified. The jury believed him. For that matter, the jury heard all of this evidence, the marketing documents, the source code, and discounted it. The FHT1 uses the 397 heat flux algorithm, right? It does. And then that output, it uses that calculation to figure out a core body temperature. What it does is it calculates a delta, T-average minus 27 degrees centigrade, which moves a fixed baseline, which is then— It uses the output of the 397 algorithm as an input to ultimately figure out the core body temperature. To approximate core body temperature. Yes, that is correct. It does. And that's the FHT1. And then if we read the patent specification to say that the output of the 397 algorithm is also called the local temperature, and the specification then equates the local temperature with deep-tissue temperature, then we're left to conclude that the output of the 397 algorithm, as disclosed by the 668 patent, is the deep-tissue temperature. The step in the process, Judge Chan, of your reasoning that's not accurate, is that the patent equates T-average to the intermediate— I'm sorry, to the deep-tissue or local temperature. That is not the case. Deep-tissue or local temperature is a calculated temperature, which is derived through an algorithm similar to the 397 patent, but it is distinct from how the FHT1 operates. It operates with a fixed baseline moving a delta, having a delta move it up and down, back and forth, as opposed to holding the thermometer to your temple and calculating it. The fixed baseline was not as accurate as it could have been because it was fixed. It was the same for every single patient. One of the innovations of the 668 patent was to delineate between deep-tissue temperature and core body temperature, which previously in the art had not been distinguished, which is why some of the prior documents are imprecise in using those words. Furthermore, I'd be remiss if I didn't say that the $2.29 million in damages for unjust enrichment, it is almost exactly half the profits that BestMed achieved. But they wouldn't have achieved any profits if not for the water bath testing protocol because they wouldn't have been able to test or market or get permission to sell the products in the U.S. Accordingly, it is a reasonable approximation for unjust enrichment as found by the jury. The contract preemption was not articulated under Rule 50A. They did not articulate a contract preemption argument. Again, that came later in time with their 50B motion, and I don't think I mentioned earlier, but the judge herself went off and decided patent preemption, which had not been raised either on 50A or on 50B with regard to unjust enrichment. One final quick thought. Thank you very much, Your Honor.